UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILIP BOREN, INC., and CSA SERVICES NORTHWEST, INC.,

Plaintiffs,

v.

CSA SERVICES, INC.,

Defendant.

CASE NO. C05-001RSM

ORDER ON MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

This matter is before the Court for consideration of defendant's motion to stay proceedings and compel arbitration in this matter. For the reasons set forth below, defendant's motion shall be granted.

DISCUSSION

This case was originally filed in King County Superior Court and removed to this Court on the basis of diversity. 28 U.S.C. §§ 1332, 1441. Plaintiff asserts a cause of action at common law for breach of an agreement, as well as under the Franchise Investment Protection Act, RCW 19.100 ("Franchise Act"), and the Consumer Protection Act, RCW 19.86 ("CPA").

This dispute arises out of an Employee Release Agreement ("Agreement") into which the parties entered on April 30, 2004. Defendant CSA Services, Inc., ("CSA") is a South Carolina corporation in the business of providing manufacturers' representative services to large national retailers. To service

ORDER ON MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION- 1

accounts for Lowe's hardware stores in the Northwest, CSA subcontracted with Philip Boren, Inc. ("Boren"), and the company CSA Northwest ("CSA/NW") was created in 2002 for that purpose.[1]  In early 2004, Lowe's requested of CSA that it no longer use subcontractors to service accounts in the Northwest.   CSA reached an agreement with CSA/NW and Boren by which the CSA/NW employees were released to work directly for CSA, with compensation to be paid to CSA/NW as consideration for the employees' release.

Paragraph 3 of the Employee Release Agreement states that CSA would pay to CSA/NW and Boren "85 % of the gross manufacturer's sales representatives' commissions earned on sales at Lowe's stores in the CSA NW Territory for the period of time prior to April 30, 2004 to be determined pursuant to paragraph 5, below." Agreement, ¶ 3.  Paragraph 5 of the Agreement states,

> The parties hereto shall negotiate in good faith in an attempt to resolve the sum and payment schedule of the sum due CSA NW under paragraph 3.  In the event the parties cannot resolve the sum and payment schedule issues within 30 days of this agreement, they shall submit the dispute to the American Arbitration Association in [*Seattle/Rock Hill, SC*] for resolution by a sole arbitrator pursuant to its Commercial Arbitration Rules.  Absent further agreement of the parties the issue may be resolved solely by written submissions of the parties to the arbitrator.

Agreement, ¶ 5. At issue in this motion are the questions of whether the arbitration shall occur in Seattle or in Rock Hill, South Carolina, and whether this arbitration clause applies to plaintiff's franchise and CPA claims as well.

The Agreement was negotiated between Philip Boren for Boren and CSA/NW, and Walter McConnell for CSA.   A draft of the Agreement was signed by Mr. Boren and sent to Mr. McConnell. This draft fixed the location of arbitration at Seattle, and bore a 60-day time period for events in ¶ 3.  Mr. McConnell crossed out "Seattle" and wrote in "Rock Hill, SC" in ¶ 5, and crossed out "60" and wrote in "30" days in ¶ 3. He initialed the ¶ 3 time change, but not the location, signed the Agreement, and

---

[1] Plaintiff has described CSA/NW as a franchisee of CSA, rather than a subcontractor.  Defendant denies that there was any franchise agreement between CSA and CSA/NW.  Answer, ¶¶ 6-10.  The resolution of that dispute is not before the Court in this motion, and need not be decided at this time.  For the purposes of discussing this motion only, the Court shall adopt defendant's position and refer to CSA/NW as a subcontractor.

ORDER ON MOTION TO STAY
PROCEEDINGS AND COMPEL
ARBITRATION- 2

returned it to Mr. Boren by facsimile transmission.  Mr. Boren also initialed the ¶ 3 time change, but not the change from Seattle to Rock Hill, and faxed the Agreement, with all signatures in place, back to Mr. McConnell.

Neither side is seeking to void or evade the arbitration clause in the Agreement;  they simply disagree as to the location and scope of that arbitration.  CSA argues that the arbitration should take place in Rock Hill because (1) Mr. Boren agreed to that term before the written draft was produced, (2) he did not object to the modification from Seattle to Rock Hill on the signed Agreement, and (3) he subsequently accepted payment for commissions that was tendered by CSA.  CSA's contention that Mr. Boren agreed to the arbitration in Rock Hill is supported by the sworn declaration of Walter McConnell, based on his personal involvement in the negotiations regarding the Agreement.  He states that he personally  "insisted that CSA Northwest agree to arbitrate . . . in Rock Hill, South Carolina," and that "Mr. Boren agreed to venue for arbitration in South Carolina."  McConnell Declaration, ¶ 7.

Mr. Boren, however, states in his own declaration that he "never agreed to arbitration in South Carolina. . . ." Boren Declaration, ¶ 11.  He also asserts that the payments which he accepted from CSA were owed pursuant to a separate commission agreement, and their acceptance should not be construed as acceptance of CSA's arbitration venue term in the Agreement.   The discrepancy between the two declarations regarding what was orally agreed cannot be resolved on the record before the Court.  However, nowhere does this declaration demonstrate that Mr. Boren actually objected to the venue modification, and notified CSA of his objection.  Certainly, he did not object in writing, as he could have by striking out Mr. McConnell's "Rock Hill" writing and replacing it with "Seattle."  Instead, he initialed the time change in ¶ 3, left the venue change to Rock Hill untouched, and faxed the signed Agreement back to Mr. McConnell as a final copy of the Agreement.  Boren Declaration, ¶ 10.  In traditional contract formation analysis terms, Mr. Boren's "Seattle" venue designation was an offer, to which Mr. McConnell counter-offered with "Rock Hill."  Mr. Boren accepted that counteroffer by returning the signed copy, without objections, to Mr. McConnell as a final representation of their agreement.  Venue for the arbitration therefore is properly in Rock Hill, South Carolina.

 ORDER ON MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION- 3

1  As to the scope of that arbitration, it appears from the complaint that plaintiff's Franchise Act and
2  CPA claims arise out of the allegedly insufficient compensation paid plaintiff under the Agreement. *See*,
3  Complaint, ¶ 19. An arbitration outcome favorable to plaintiff may render the Franchise Act and CPA
4  claims moot. It is thus appropriate to stay these proceedings until arbitration has concluded.
5  Accordingly defendant's motion to compel arbitration in Rock Hill, South Carolina is
6  GRANTED, and this case is STAYED until the conclusion of arbitration proceedings. Plaintiff shall
7  notify the Court when the arbitration has been completed, and may file a motion to lift the stay herein at
8  that time.

11  DATED this 3rd day of October, 2005.

14  RICARDO S. MARTINEZ
    UNITED STATES DISTRICT JUDGE

27  ORDER ON MOTION TO STAY
    PROCEEDINGS AND COMPEL
28  ARBITRATION- 4